IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PAUL K.,[1] | No. 6:19-cv-2028-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Paul K.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On September 29, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, with an amended alleged onset date of February 23, 2012. Tr. 15. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 84-116, 171-76. Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Mark Triplett on November 14, 2018. Tr. 33-83. On December 28, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 12-32. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 23, 2012, the amended alleged onset date. Tr. 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, peripheral neuropathy, diabetes mellitus, hyperlipidemia, hypertension, obesity, depression, and anxiety. Tr. 18. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally stoop and crawl. He can frequently, but not constantly, handle and finger bilaterally. The claimant can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. He can perform simple, routine tasks. He can tolerate occasional contact with the general public.

Tr. 20.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as production assembler, electrical accessories assembler, and routing clerk. Tr. 27. The ALJ therefore found Plaintiff not disabled. Tr. 27.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises six issues with the ALJ's decision. He argues the ALJ erred by: (1) erroneously discounting his subjective symptom testimony, (2) improperly rejecting the opinion of his treating psychologist, Dr. Geoffrey Gordon, Psy.D., (3) failing to accurately account for his obesity, infecting subsequent steps of the five-step evaluation, (4) failing to meet his burden at step five, (5) erroneously discounting lay witness testimony, and (6) failing to develop the record. I address these issues in turn.

I.      **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified[2] that he has panic attacks "sometimes, almost daily." Tr. 64. He shared that the panic attacks can last up to a day or more, and affect his ability to focus. Tr. 65. He complained of short-term memory problems associated with these panic attacks. Tr.

---

[2] Plaintiff also testified about a litany of other physical limitations, *see, e.g.,* Tr. 60-64, which the parties do not dispute here. *See* Pl. Br., ECF No. 16 at 12, n. 3; Def. Br., ECF No. 17 at 7-8.

4 – OPINION & ORDER

65. He also testified that he has had visual hallucinations for several years, and that he tries to avoid stressful situations. Tr. 65-66, 260.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 21 However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence, that Plaintiff conditions improved with treatment, and that Plaintiff's daily activities conflict with the level of alleged disability in his testimony. Tr. 22-24.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ reasonably relied on conflicting medical records to discount Plaintiff's subjective symptom testimony about his mental health symptoms. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff stated he has significant anxiety and PTSD, leading to panic attacks that affect his focus and short-term memory. Tr. 65-66. The ALJ compared these allegations to Plaintiff's medical history, however, and found it did not match up with Plaintiff's allegations. Tr. 23-24. For example, while Plaintiff alleged disability beginning in 2012 the ALJ noted that Plaintiff did not complain of any mental health symptoms to a provider until March 2017. Tr. 23 (citing Tr. 821). Plaintiff then had several visits where he complained of anxious mood, but not about symptoms as severe as those described in his testimony. Tr. 823, 824. Likewise, the ALJ noted that Plaintiff denied any depression, sadness, or anxiety and overall was doing well on his current medication. Tr. 717. Plaintiff's medical records also showed he had a normal mental status exam, including normal thought content, affect, and eye contact. Tr. 717. Tr. 743, 862, 867. Several treatment notes with Dr. Gordon further documented normal mental status findings, including normal thought content, full orientation, and active participation. Tr. 726, 728, 731, 733, 735, 738, 835, 837, 839, 842. Finally, the ALJ highlighted that Plaintiff's allegations of mental health problems were inconsistent. Tr. 23. While Plaintiff denied panic attacks to one provider, he alleged increasing panic attacks to his primary care provider. Tr. 23 (citing Tr. 676). Ultimately, the ALJ's decision to discount Plaintiff testimony about these symptoms was clear, convincing, and supported by substantial evidence in the record.

*B. Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ also reasonably concluded that Plaintiff's mental health symptoms improved with treatment, which undermined his hearing testimony. Although Plaintiff complained that symptoms associated with his anxiety and PTSD impacted his ability to work, Tr. 65-66, the ALJ noted that Plaintiff addressed these symptoms effectively with medications and regular treatment. Tr. 23. Specifically, Plaintiff began having panic attacks in March, 2017, and by November of that year was taking Paxil and alprazolam with good results. Tr. 23 (citing Tr. 714). By his routine exam in September, 2018 Plaintiff denied any depression, sadness, or anxiety and reported that he overall was doing well on his current medication. Tr. 717. Plaintiff also shared that counseling and medication were helping with his mental health symptoms. Tr. 678. This is another clear and convincing reason, supported by substantial evidence to discount Plaintiff's symptom testimony.

*C. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony about his panic attacks because it was inconsistent with his daily activities. Tr. 25. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). The ALJ found Plaintiff's ability to participate in therapeutic exercises such as meditation, cognitive behavioral therapy, writing, and play the guitar contradicted his testimony of "disabling depression/anxiety." Tr. 25.[3]

None of the activities the ALJ listed undermines Plaintiff's testimony about panic attacks and cognitive limitations associated with depression or anxiety. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ cited Plaintiff's ability to play the guitar, which he did "sometimes to keep [his] mind busy." Tr. 255, 825. The

---

[3] Plaintiff argues these were impermissible *post hoc* rationalizations because the ALJ failed to cite the exhibits reflecting Plaintiff's guitar playing and meditative exercises in his opinion, but the Commissioner cited the exhibits in his Brief. Pl. Reply, ECF No. 18 at 13; Def. Br., ECF No. 17 at 9. Plaintiff's daily activities are fair game, however, because they are not new arguments conjured up by the Commissioner after the fact. *See* Tr. 25. The Court is constrained to review "the reasons the ALJ asserts," and the ALJ relied on these reasons expressly in his opinion. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The fact that the ALJ failed to cite exhibit numbers backing up his argument in his opinion is regrettable, but does not prevent the Commissioner from relying on the ALJ's stated rationale in this appeal. *Ibid.*

ALJ also highlighted Plaintiff's ability to meditate and write: at a pair of 2018 counseling appointments Plaintiff discussed how "some of the YouTube meditation videos he watched…were helpful in establishing calm." Tr. 726, 741. It is not clear from the ALJ's opinion or Defendant's brief which of these activities transfers to a "work skill," or contradicts any piece of Plaintiff's testimony. Plaintiff testified that his anxiety and PTSD cause panic attacks, memory problems, and concentration issues, all of which make it more difficult for him to work. Tr. 65-66. That Plaintiff plays guitar or occasionally watches YouTube meditation videos to help him calm down does not meaningfully contradict his testimony or establish transferable work skills. It was error for the ALJ to rely on this as a basis to discount Plaintiff's subjective symptom testimony because substantial evidence does not support the conclusion that Plaintiff's daily activities undermine his symptom testimony.

       The ALJ's error was harmless, however, because he identified two other sufficient bases to discount Plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record"). Therefore, although the ALJ erred in finding Plaintiff's daily activities undermined his symptom testimony, that error was harmless.

**II.**      **Medical Opinion Evidence**

       An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed his records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims like this one filed before March 17, 2017, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-

examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester*, 81 F.3d at 830.

To reject a contradicted treating doctor's opinion, the ALJ must present "specific, legitimate reasons" for doing so. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040. The opinion of a non-examining physician cannot by itself constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995). Such opinions are substantial evidence only if they are consistent with other evidence in the record which contradicts the treating or examining medical opinion at issue. *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).

    *A. Dr. Geoffrey Gordon, Psy.D.*

Dr. Geoffrey Gordon, Psy.D. is Plaintiff's treating psychologist and has been seeing him on a weekly basis since June 7, 2018. Dr. Gordon noted that Plaintiff reported he has not been able to work since 2007, despite wanting to, the extent of his symptoms fluctuate with the degree to which he needs to interact with others, he will avoid other people at times because he is aware of a tendency that emotionally intense interactions cause anger in general, and even aggression when in a disassociate state, and he has difficulty thinking or concentrating when having a panic attack. Tr. 741-742. Dr. Gordon also stated that Plaintiff has had persistent panic attacks that are

being addressed in treatment. Tr. 741-742. Dr. Gordon noted several limitations that have been consistent since the beginning of treatment. Tr. 742. Dr. Gordon has observed Plaintiff become agitated and psychologically aroused with greater anxiety, and that he does not have issues with alcohol or drugs. Tr. 742.

Dr. Gordon stated that Plaintiff's psychological symptoms affect his ability to work with the public, work in coordination with others, and respond appropriately to criticism and instruction, he has a limited ability to tolerate interactions with others, which will lead him to becoming overwhelmed and irritated at people that want to talk to him, and, as such, he would not be able to complete complex or detailed tasks, or sustain his attention and concentration to perform simple routine tasks, throughout an 8 hour workday, 5 days per week, consistently without absences. Tr. 742.

The ALJ gave some weight to the assigned limitations on social interaction with others and the public based on Plaintiff's history of depression, anxiety, and panic. Tr. 24. But the ALJ gave Dr. Gordon's opinion that Plaintiff would be unable to complete a work day "little weight." Tr. 24. The ALJ specifically disregarded Dr. Gordon's opinions about Plaintiff's disability as internally inconsistent,[4] inconsistent with the medical record as a whole, and conclusory. Tr. 24.

The ALJ adequately supported his rejection of Dr. Gordon's opinion with substantial evidence that the impairments he described do not match up with his contemporaneous clinical

---

[4] Plaintiff argues that the ALJ did not cite internal inconsistency as a reason to discount Dr. Gordon's opinion, and that the Commissioner impermissibly raises this justification after the fact. Pl. Reply at 5 (contending that "the ALJ did not say there were contradictions between the doctor's opinion and the doctor's own observations.")(emphasis in original). Plaintiff is incorrect. The ALJ may not have used the word "inconsistency," but he clearly relied on the conflict between Dr. Gordon's notes showing "claimant presented with a normal mental status in September 2018," and Dr. Gordon's opinion one month later that "[Plaintiff] is essentially disabled and unable to work since 2007." Tr. 24.

11 – OPINION & ORDER

observations or the medical record as a whole. As noted above, internal inconsistencies are a sufficient reason for an ALJ to find a treating physician's opinion unpersuasive. *Bayliss*, 427 F.3d 1216; *see also Montavono v. Berryhill*, 2018 WL 1069464, at *7 (D. Or. Feb. 26, 2018) (finding discrepancy between objective examination findings and doctor's conclusion a "clear and convincing reason" to discount the medical opinion). For example, the ALJ noted that at all of Plaintiff's visits to Dr. Gordon between June 2018 and September 2018, his thought content was within normal limits, he was fully oriented, he was collaborative, and he actively participated throughout each session. Tr. 726, 728, 731, 733, 735, 738, 835, 837, 839, 842. The ALJ likewise relied on the inconsistency between Dr. Gordon observing Plaintiff having a "normal" mental status in September 2018, and concluding that he was disabled and had been unable to work since 2007 only a month later. Tr. 742. Furthermore, Dr. Gordon wrote that Plaintiff completed his symptom checklist with a range of contradictory severities on each specific symptom, rendering it clinically without value. Tr. 729. In late 2018 Plaintiff also denied having panic attacks and felt "really good" with only slight anxiety. Tr. 733. Taken together, these notes provide substantial evidence to support the ALJ's conclusion that Dr. Gordon's opinion that Plaintiff was disabled conflicted with his own observations, and the medical record as a whole.

      The ALJ also reasonably considered Dr. Gordon's short tenure as Plaintiff's treating psychologist. Under the regulations, "length of the treatment relationship and the frequency of examination" are relevant factors for the ALJ to consider when weighing medical opinions. 20 C.F.R. §§ 404.1527, 416.927. Although Dr. Gordon saw Plaintiff on a weekly or bi-weekly basis, he had only begun treating Plaintiff in June 2018, just a few months prior to giving his opinion. Tr. 831-34. The ALJ properly questioned the validity of Dr. Gordon's opinion on the basis of just a few months of treatment. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (noting that

the ALJ may discount the opinion of a treating physician who has not seen the patient long enough to develop a "longitudinal picture"). In particular because Dr. Gordon opined that Plaintiff was unable to work since 2007, and the alleged onset date is February 23, 2012, it was reasonable for the ALJ to discount Dr. Gordon's opinion because he based it off a five-month treating relationship that only began in June, 2018. Tr. 831-34. This was another specific and legitimate basis for the ALJ to consider when assigning Dr. Gordon's disability opinion "little weight."

Plaintiff takes issue with the ALJ's finding, arguing it lacks specificity[5] and that the record weighs more heavily in favor of Dr. Gordon's opinions. Plaintiff argues the ALJ failed to cite the "overwhelming majority" of Dr. Gordon's notes that support his conclusion that Plaintiff was unable to work. Pl. Reply, ECF No. 18 at 6 (citing *Trevizo,* 871 F.3d at 676-677). But it is not this Court's job to consider afresh how much weight each individual piece of medical evidence ought to have. Instead, the Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ"). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more

---

[5] Plaintiff elsewhere argues an "independent reason for reversal" is that the ALJ erred by failing to adequately consider all the factors about the reliability of medical opinions found in 20 C.F.R. 404.1527(c). Pl. Br., ECF No. 16 at 10. The regulations do not require the ALJ to discuss the factors, but only to consider them. *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018); see also 20 C.F.R. § 404.1527(c). Contrary to Plaintiff's assertion, the ALJ did discuss the § 404.1527(c) factors that were relevant to Dr. Gordon's opinion, in particular its supportability, and found the opinion wanting. *See* Tr. 24. This satisfied the ALJ's obligation under 20 C.F.R. 404.1527(c).

than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, he has not (and cannot) establish error by simply advancing a different interpretation of the record. The ALJ supported his decision to offer Dr. Gordon's opinion "little weight" with substantial evidence, and did not err.

### III.    Obesity

Plaintiff argues that the ALJ also erred by ignoring the effect of obesity on his mental health symptoms. Pl. Br. at 14-15 (citing Social Security Ruling (SSR) 02-1p). Plaintiff argues the ALJ's error infected "almost every other part" of the ALJ's five-step analysis. *Id.* SSR 02-1p requires an ALJ to consider the effect of obesity on a claimant's residual functional capacity and explain whether obesity caused any physical or mental limitations. SSR 02-1p, 2002 WL 34686281, at *6-7 (Sept. 12, 2002).

Plaintiff's obesity is well-documented in the record. Tr. 355, 358, 365, 493, 505, 514, 542, 555, 587, 691, 714, 721. The ALJ acknowledged Plaintiff's obesity, and evaluated its effect on his ability to work. Tr. 23. Although SSR 02-01p instructs ALJs that fatigue caused by obesity "may affect the individual's . . . mental ability to sustain work activity," 2012 WL 34686281, at *6, in this case, there is no evidence that Plaintiff suffered any mental health symptoms due to fatigue. The record documents that Plaintiff was obese, but there is no evidence that he suffered from mental impairments due to obesity. Plaintiff's testimony and the medical records refer to Plaintiff's anxiety, PTSD, and panic attacks—none of which overlap with the mental health limitations identified in SSR 02-12p.

The ALJ did not err, because he adequately discussed how Plaintiff's obesity impacted his other limitations as required by SSR 02-1p. Plaintiff points to no credited medical evidence

or functional limitations describing how his obesity contributes to his mental or physical health limitations that the ALJ supposedly ignored. *Burch v. Barnhart*, 400 F.3d 676, 683-84 (9th Cir. 2005) (holding that ALJ did not err in considering obesity because claimant did not identify "any functional limitations as a result of his obesity that the ALJ failed to consider"). The ALJ reasonably took record evidence into account, concluded that neither the medical opinion evidence, nor the symptom testimony indicated that Plaintiff's obesity contributed to fatigue-related mental health limitations. Accordingly, the ALJ did not err in considering plaintiff's obesity.[6]

## IV. Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from

---

[6] Plaintiff also argues the ALJ erred by failing to adequately consider his obesity in the RFC, or in the hypotheticals posed to the vocational expert (VE) at step five. Pl. Br., ECF No. 16 at 16-17. Plaintiff does not identify any evidence of obesity the ALJ supposedly overlooked, point to any specific aspect of the RFC he believes is erroneous, or elucidate which question posed to the VE was inadequate. *See id, see also* Pl. Reply, ECF No. 16 at 16-17.
In fact, the record shows the ALJ reasonably considered Plaintiff's obesity, and provided relevant limitations in the RFC. *See, e.g.* Tr. 23 ("[C]laimant's obesity significantly interferes with his ability to perform physical activities or routine movement but it does not preclude work activity consistent with the exertional and postural requirements of the residual functional capacity described above"). The ALJ included these limitations in hypotheticals posed to the VE, and otherwise supported his step five determination with substantial evidence. Tr 75-77. Accordingly, the ALJ did not err at step five. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

15 – OPINION & ORDER

nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122

Plaintiff's sister has known Plaintiff all her life and sees him 2-3 days a week. Tr. 321. She provided a lay witness statement that detailed, among other things, how "he gets very aggravated easy," and "he's hard to talk to sometimes," Tr. 321. Plaintiff's sister shared that "he doesn't focus when I talk to him, loses his train of thought," and that he seems to have high anxiety attacks in relation to police as they attacked him. Tr. 323. She described how he has more and more anxiety attacks which keep him from sleeping well and focusing on daily tasks. Tr. 318. She also described his difficulties handling stress. Tr. 324.

The ALJ erred by failing to provide specific, germane reasons to discount the lay witness testimony, but because this lay witness evidence mirrors Plaintiff's own, this error was harmless. An ALJ's failure to provide germane reasons for rejecting lay witness evidence is harmless where an ALJ properly rejects a claimant's testimony and the lay witness evidence describes the same limitations. *Molina*, 674 F.3d at 1122. Here, the ALJ's clear and convincing reasons for

discounting Plaintiff's self-reports, discussed above, apply equally well to the similar statements from Plaintiff's sister. *Compare* Tr. 65-72 (Plaintiff's testimony) *with* Tr. 321-24 (Plaintiff's sister's testimony). Any error in analyzing this statement was therefore harmless.

## V.      Duty to Develop the Record

Plaintiff also argues the ALJ failed to develop the record in "any area where the record is inadequate to allow for a proper evaluation of the evidence." Pl. Br. at 16. As a general matter, the ALJ has a duty to develop the record, but Plaintiff retains the burden to prove that he is disabled and must inform the agency about or submit all evidence known to him that relates to the alleged disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. § 404.1512(d). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). This principle does not allow a claimant to shift his own burden of proving disability to the ALJ. *Id*. at 459.

The ALJ did not err by failing to further develop the record in this case. Plaintiff points to no specific area of the record that is either ambiguous or inadequate. Pl. Br at 16. Furthermore, his request that the Court order the ALJ to further develop the record anywhere it is "inadequate" is vague, and does not even suggest the ALJ erred in his obligation to develop the record in any way. The Court finds no error here.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED: 12/12/2023 .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

18 – OPINION & ORDER